[No. S107792. Dec. 18, 2003.]

FELICIA KAY EASTBURN, a Minor, etc., et al., Plaintiffs and Appellants,
v.
REGIONAL FIRE PROTECTION AUTHORITY et al., Defendants and
Respondents.

1176

COUNSEL

Law Offices of Charles D. Sneathern and Charles D. Sneathern for Plaintiffs and Appellants.

Baughman & Wang and David E. Russo as Amici Curiae on behalf of Plaintiffs and Appellants.

Graves & King, Patrick L. Graves, Harvey W. Wimer III and Dennis J. Mahoney for Defendants and Respondents Regional Fire Protection Authority and City of Victorville.

Cuff, Robinson & Jones, W. O. Robinson and Brian C. Cuff for Defendant and Respondent Barstow Fire Protection District.

Dennis J. Herrera, City Attorney (San Francisco), Burk E. Delventhal and Ellen Forman, Deputy City Attorneys; Pollak, Vida & Fisher, Girard Fisher and Daniel P. Barer for 76 California Cities, The California Association of Joint Powers Authorities and The California State Association of Counties as Amici Curiae on behalf of Defendants and Respondents.

OPINION

CHIN, J.—In California, public agencies each year receive *millions* of 911 dispatch calls seeking emergency, medical, and fire services. (E.g., Sen. Com. on Energy and Public Utilities and Joint Com. on Fire, Police, Emergency and Disaster Services (Nov. 21, 1990) Joint Interim Hearing on the 911 Emergency Response System—An Overview of Its Effectiveness, pp. 11 [Cal. Highway Patrol], 18 [Los Angeles Police Dept.], 23 [Los Angeles County], 25 [Los Angeles Fire Dept.].) In this case, we must decide whether public entities employing emergency dispatchers are subject to direct or vicarious tort liability for injury attributable in part to a dispatcher's failure or delay in responding to a 911 call.  ██  We conclude that, based on applicable statutory provisions and the legislative policies underlying them, no statute imposes direct liability on public entities in such situations (see Gov. Code, §§ 815, 815.6 [direct liability for breach of statutory mandatory duty]), and vicarious liability (see Gov. Code, §§ 815.2, subd. (a), 820) is limited to cases involving gross negligence or bad faith (Health & Saf. Code, § 1799.107 (hereafter section 1799.107)). Plaintiffs have failed to plead facts disclosing any acts of gross negligence or bad faith on the part of defendants or their employees, and they presently assert no additional facts that might justify an amended complaint. Accordingly, we will affirm the judgment of the Court of Appeal, which had affirmed a judgment of dismissal in favor of defendants.

Because this case reaches us after the trial court sustained defendants' demurrers, we assume the facts alleged in plaintiffs' complaint are true. Defendants named in the complaint included the Regional Fire Protection Authority, the Barstow Fire Protection District, and (following amendment to the complaint) the City of Victorville. The complaint alleged defendants are public entities providing "emergency dispatch services for 911 callers." Defendants allegedly had a duty to exercise reasonable care in staffing and training emergency dispatch personnel, in promulgating reasonable guidelines for handing 911 calls, and in responding to such calls. The complaint also alleged that plaintiff Felicia Kay Eastburn, then three years old, suffered an electric shock while bathing, and that although her parents informed defendants' 911 emergency dispatcher of the injury, defendants "failed to dispatch emergency personnel with emergency equipment, so that Plaintiff [the minor] was denied early and prompt medical attention."

As a result of being deprived of prompt medical care, Felicia allegedly suffered permanent, debilitating injuries for which she sought general, special, and punitive damages from defendants. Plaintiffs further alleged that defendants acted "negligent[ly] and careless[ly]" and in "willful, wanton and . . . conscious disregard of the rights of the safety of the general public, including Plaintiff," thus demonstrating malice and justifying a punitive damages award. Felicia's parents, plaintiffs Herbert and Lori Eastburn, alleged they suffered related damages and incurred expenses.

The trial court sustained defendants' demurrers without leave to amend, and plaintiffs appealed from the subsequent judgment of dismissal. The Court of Appeal affirmed the judgment on the ground that, "under Government Code section 815 and Health and Safety Code section 1799.107, defendants are immune from liability except for bad faith or grossly negligent conduct, which plaintiffs admittedly cannot allege." (Fn. omitted.) We agree and will affirm.

## 1. *Applicable Statutes*

The California Tort Claims Act provides that "[a] public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." (Gov. Code, § 815, subd. (a).) As that language indicates, the intent of the Tort Claims Act is to confine potential governmental liability, not expand it. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127 [119 Cal.Rptr.2d 709, 45 P.3d 1171] (*Zelig*).) We first must determine whether any statute imposes *direct* liability on defendant agencies here. At oral argument, plaintiffs' counsel suggested that Government Code section 820, subdivision (a), applied. But that section provides only that public *employees* are liable for injuries from their acts or omissions in the scope of their employment to the

same extent as private persons, unless otherwise provided by statute. As we recently observed, no similar provision makes public *agencies* liable for their own negligent conduct or omission to the same extent as a private person or entity. (*Zelig, supra,* 27 Cal.4th at pp. 1127–1128.)

■ Government Code section 815.6, makes a public entity directly liable for its breach of a statutory "mandatory duty," but with the exception of Health and Safety Code section 1799.107, discussed below, plaintiffs cite, and we have found, no statutory provision declaring or defining a public agency's duty of care with respect to handling 911 emergency calls. Civil Code section 1714 imposes a general duty of care on all persons but, as we explain below in connection with our discussion of *Ma v. City and County of San Francisco* (2002) 95 Cal.App.4th 488 [115 Cal.Rptr.2d 544] (*Ma*), section 1714 is an insufficient statutory basis for imposing direct liability on public agencies.

■ Government Code section 815.2, subdivision (a), makes a public entity *vicariously* liable for its employee's negligent acts or omissions within the scope of employment (see Gov. Code, § 820), but section 815.2, subdivision (b), adds the important qualification that a public entity is not liable for injuries committed by an employee who is immune from liability for such injuries. Once again, Health and Safety Code section 1799.107 is the only statute we have found pertaining to the subject of the liability and immunity of public employees performing emergency rescue services such as 911 dispatching.

In our view, therefore, the critical statute at issue here is section 1799.107. This statute provides in pertinent part: "(a) [A] qualified immunity from liability shall be provided for public entities and emergency rescue personnel providing emergency services. [¶] (b) [N]either a public entity nor emergency rescue personnel shall be liable for any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, *unless the action taken was performed in bad faith or in a grossly negligent manner.*" (Italics added.)

Section 1799.107, subdivision (d), defines "emergency rescue personnel" to mean "any person who is an officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, or of a private fire department, whether that person is a volunteer or partly paid or fully paid, while he or she is actually engaged in providing emergency services as defined by subdivision (e)."

Finally, subdivision (e) of section 1799.107 provides that "emergency services" includes "first aid and medical services, rescue procedures and

transportation, *or other related activities* necessary to insure the health or safety of a person in imminent peril." (Italics added.)

### 2. *The Zepeda and Ma Decisions*

Two appellate cases have expressed somewhat conflicting views regarding the reach of section 1799.107, and the liability of public agencies providing emergency rescue services. (See *Ma, supra,* 95 Cal.App.4th 488; *Zepeda v. City of Los Angeles* (1990) 223 Cal.App.3d 232 [272 Cal.Rptr. 635] (*Zepeda*).) We believe the following review of these cases demonstrates that *Zepeda* more correctly interprets section 1799.107.

In *Zepeda, supra,* 223 Cal.App.3d 232, the plaintiffs' decedent had been shot in the neck, but city paramedics who were summoned to the scene allegedly refused to render medical aid until the police arrived. After the decedent died of his wounds, the plaintiffs sued the city for wrongful death damages but the trial court sustained its demurrer and dismissed the plaintiffs' action. The appellate court affirmed, observing that "[a]s a general rule, one has no duty to come to the aid of another," absent some special relationship between the parties. (*Id.* at p. 235, citing, e.g., *Williams v. State of California* (1983) 34 Cal.3d 18, 23 [192 Cal.Rptr. 233, 664 P.2d 137]; Rest.2d Torts, § 323; see also *Zelig, supra,* 27 Cal.4th at pp. 1128–1129.)

According to *Zepeda*, these principles likewise apply to law enforcement and emergency rescue personnel employed by public entities: "Therefore, recovery has been denied for injuries caused by the failure to investigate or respond to requests for assistance where the police had not induced reliance on a promise, express or implied, that they would provide protection. [Citations.]" (*Zepeda, supra,* 223 Cal.App.3d at p. 235.) *Zepeda* rejected the argument that Health and Safety Code section 1799.107 establishes a mandatory duty (see Gov. Code, § 815.6) on the part of public agencies to provide emergency services to the public. Instead, in *Zepeda*'s view, this section provides a *qualified immunity* for public agencies and their emergency rescue personnel by limiting their liability to acts of gross negligence or bad faith.

As *Zepeda* states, "the statute does not impose a general duty upon emergency personnel to provide assistance whenever and wherever summoned. Subdivision (b) [of section 1799.107] merely defines the level of negligence that will result in the imposition of liability once assistance is rendered. . . . Had the Legislature desired to impose upon emergency personnel the mandatory duty to render aid, it could easily have said so." (*Zepeda, supra,* 223 Cal.App.3d at p. 237.) Thus, *Zepeda* concluded that because the defendant city owed no mandatory statutory duty to the plaintiffs, and its paramedics had no statutory or common law duty to provide assistance, the

trial court properly sustained the city's demurrer. *Zepeda*, if correct, strongly supports defendants' argument here that they are entitled to a qualified immunity from plaintiffs' action.

The *Ma* decision, on the other hand, would support a theory of potential liability to plaintiffs in this case. Finding Health and Safety Code section 1799.107 inapplicable to 911 dispatchers, the *Ma* court nonetheless held that a public agency and its dispatchers owe the public a mandatory duty of care arising from the common law duty to act with reasonable care that is embodied in Civil Code section 1714. We disagree. As will appear, section 1714, standing alone, fails to provide the requisite statutory basis for public entity liability required by Government Code sections 815 and 815.6. We further conclude that *Ma* erred in holding Health and Safety Code section 1799.107 inapplicable to 911 dispatchers and their public employers. In our view, *Zepeda* correctly held that the section indeed applies, and provides a qualified or limited immunity to such persons.

In *Ma*, the plaintiffs' decedent Chan experienced difficulty in breathing from an asthma attack. Her family drove her to a nearby hospital, which unfortunately could not provide emergency medical services. A hospital security guard called defendant city's 911 medical emergency number to report Chan's distress and breathing difficulty. Perhaps due to language differences or confusion as to whether Chan was reacting to a drug overdose, but in any event allegedly violating the city's dispatching protocols, the 911 dispatcher merely summoned police officers to the scene, and they then called for paramedics. Although the total elapsed time between the 911 call and the arrival of medical assistance was only 20 minutes, Chan died before the paramedics could reach her. (See *Ma, supra,* 95 Cal.App.4th at pp. 495–501.)

The *Ma* plaintiffs sued the city for damages, but the trial court granted the city summary judgment, concluding that it owed the plaintiffs no duty of care and, in any event, it was entitled to the discretionary act immunity in Government Code section 820.2. On appeal, the *Ma* court disagreed with both holdings. Without acknowledging the provisions of Government Code section 815, requiring a statutory basis for direct public entity liability, the *Ma* court, "employing a traditional common law duty analysis," held that the city owed its citizens the general duty of ordinary care embodied in Civil Code section 1714. (*Ma, supra,* 95 Cal.App.4th at p. 502.) Using traditional tort analysis (i.e., balancing the factors enumerated in *Rowland v. Christian* (1968) 69 Cal.2d 108, 112–113 [70 Cal.Rptr. 97, 443 P.2d 561], including the foreseeability and certainty of harm, the close connection with and moral blame of the defendant's conduct, the policy of preventing future harm, etc.), the *Ma* court concluded that "all the individual *Rowland* factors favor duty overwhelmingly." (*Ma, supra,* 95 Cal.App.4th at p. 511.)

As for the city's possible qualified immunity under section 1799.107, the *Ma* court found the section inapplicable to 911 emergency dispatchers. Contrary to the assumptions of *both* parties in *Ma*, the appellate court concluded that "the legislative history of section 1799.107, including that relating to subsequent attempts to amend the section, leads us to conclude that the limited immunity codified in section 1799.107 does not extend to 911 dispatching." (*Ma, supra*, 95 Cal.App.4th at p. 513.) The court focused on the statutory definition of "emergency rescue personnel" in section 1799.107, subdivision (d), namely, persons who are employed by a federal, state, or municipal fire department, fire protection, or firefighting agency while "actually engaged in providing emergency services as defined in subdivision (e)." In *Ma*'s view, 911 dispatchers are not persons providing such emergency services. Instead, *Ma* found that the provision was enacted "specifically to shield from potential liability *firefighters* engaged in rescue operations not involving fire suppression activities . . . ." (*Ma, supra*, at p. 516, italics added; see *Lewis v. Mendocino Fire Protection Dist.* (1983) 142 Cal.App.3d 345, 346–347 [190 Cal.Rptr. 883].)

Having found a mandatory duty to the plaintiffs arising from Civil Code section 1714, and having concluded that Health and Safety Code section 1799.107 was inapplicable to 911 dispatching, *Ma* reversed a summary judgment in the city's favor and remanded the case for trial. (*Ma, supra*, 95 Cal.App.4th at p. 520.) If *Ma* were correct, plaintiffs would be entitled to similar relief here.

### 3. *Discussion*

We think that *Ma* erred in concluding that Civil Code section 1714, and the common law principles it codified, were alone sufficient bases for imposing *direct* tort liability on a public entity. As previously noted, "[a] public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." (Gov. Code, § 815.) ■ In other words, direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714. Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles. (See, e.g., *Zelig, supra*, 27 Cal.4th at pp. 1131–1132; *Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 932 [80 Cal.Rptr.2d 811, 968 P.2d 522], and cases cited.) As *Zelig* observed, quoting from an earlier case, " ' "the intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances . . . ." ' " (*Zelig, supra*, at p. 1127.)

As for a public agency's *vicarious* liability based on its own employee's act or omission (see Gov. Code, § 815.2, subd. (a)), we believe the *Ma* court also erred in concluding that, based on legislative history including failed proposed amendments, the city and its 911 dispatchers lacked qualified immunity under Health and Safety Code section 1799.107. ██ In our view, *Ma*'s reliance on legislative history was unnecessary, for despite the absence of any *express* reference to 911 emergency dispatching, the language of Health and Safety Code section 1799.107 is clearly broad enough to include that activity within its scope. The city's 911 dispatcher certainly was an employee working for the city's "fire protection" agency within the scope of subdivision (d), and this dispatcher was employed by the city to provide, and was "actually engaged in providing emergency services as defined in subdivision (e)," namely, "rescue procedures . . . *or other related activities* necessary to insure the health or safety of a person in imminent peril." (Health & Saf. Code, § 1799.107, subds. (d), (e), italics added.) The 911 dispatching service, at the least, is an activity closely "related" to emergency rescue operations.

██ We conclude that section 1799.107 unambiguously applies to 911 emergency dispatching. But even were we to consider the subsequent legislative history cited by *Ma*, the failure of the Legislature to adopt proposed amendments expressly extending the section to 911 dispatchers could merely reflect a determination that such amendments were unnecessary because the law already so provided. (See, e.g., *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 28–29 [56 Cal.Rptr.2d 706, 923 P.2d 1].) We disapprove *Ma v. City and County of San Francisco, supra,* 95 Cal.App.4th 488, to the extent it is inconsistent with this opinion.

With these principles in mind, we turn to the question of defendants' liability in the present case. Does Health and Safety Code section 1799.107 afford a basis for defendants' direct or vicarious liability? In their appellate briefs before the Court of Appeal, plaintiffs assumed that section 1799.107 did apply in this case, and that *vicarious* liability could be based on the gross negligence of defendants' 911 emergency dispatcher. In light of the intervening *Ma* decision, however, plaintiffs now state that they "abandon" reliance on section 1799.107, agreeing that it has no application to 911 dispatchers. Instead, following *Ma,* they posit defendants' *direct* liability on Civil Code section 1714, a general tort statute which, as we have seen, is insufficient by itself to serve as a basis for direct public liability. Plaintiffs also suggest that, if permitted to amend, they would allege a special relationship existing between 911 call dispatchers and anyone seeking their aid. Plaintiffs fail to explain in what manner such a relationship with the general public could be deemed a "special" one.

In *Zepeda, supra,* 223 Cal.App.3d at pages 235–236, the court recognized that paramedics and other emergency rescue personnel are entitled to the benefit of the general rule that, absent a special relationship between them, a person owes no duty to come to the aid of another, assuming the person by his conduct has neither created nor increased the peril. (See also, *Zelig, supra,* 27 Cal.4th at pp. 1128–1129; *Williams v. State of California, supra,* 34 Cal.3d at p. 25.) If, as *Zepeda* holds, paramedics do not automatically stand in a special relationship with anyone seeking their services, then logically neither do 911 call dispatchers.

■ But it is unnecessary to decide whether the dispatcher in the present case may have owed and breached a common law duty of care to plaintiffs because here, as previously discussed, the dispatcher's activities clearly were shielded by the qualified immunity of Health and Safety Code section 1799.107. (See *Zepeda, supra,* 223 Cal.App.3d at p. 237.) We conclude that plaintiffs have failed to identify an independent statutory basis for imposing liability on defendants, as required by Government Code section 815. Absent a showing of bad faith or gross negligence, defendants are immune under Health and Safety Code section 1799.107 for the acts or omissions of the 911 emergency dispatchers in their employ.

### 4. *Proposed Amendment to Complaint*

At the hearing on the demurrer of defendant Regional Fire Protection Authority, plaintiffs' counsel told the court he could not amend the complaint except to add a general allegation of gross negligence or bad faith. The court ruled that "plaintiff has not indicated anything that changes in the complaint or the amendments that could take it beyond *Zepeda* or [*sic*] the Court will sustain the demurrer without leave to amend. . . . I can't see how it can be amended at this point to get beyond—or work its way around *Zepeda.*"

On appeal, plaintiffs initially argued that they should have been allowed to amend their complaint to allege either gross negligence or, in the alternative, a special relationship giving rise to a special duty by defendants toward them. Relying on *Ma,* however, plaintiffs now treat section 1799.107 as inapplicable. Having found *Ma* incorrect in this regard, we consider whether plaintiffs should be permitted to amend their complaint as originally sought.

Plaintiffs' pleadings and briefs fail to set forth any additional relevant facts that might support a finding of gross negligence or bad faith. Plaintiffs' briefs before the Court of Appeal made the additional allegation that the 911 dispatcher put them "on hold" during their telephone conversation, but such conduct would hardly amount to gross negligence or bad faith. The case law has defined gross negligence as " 'the want of even scant care or an extreme

departure from the ordinary standard of conduct.' " (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 138 [181 Cal.Rptr. 732, 642 P.2d 792]; see *Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 358 [257 Cal.Rptr. 356].) Nothing in plaintiffs' pleadings or appellate briefs points to such extreme conduct. Accordingly, the trial court properly sustained the demurrer without leave to amend.

The judgment of the Court of Appeal in defendants' favor is affirmed.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.