[No. F060905. Fifth Dist. July 11; 2011.]

ALL ANGELS PRESCHOOL/DAYCARE et al., Plaintiffs and Appellants, v. COUNTY OF MERCED et al., Defendants and Respondents.

396

COUNSEL

Gerald Campbell and Antoinette Searle, in pro. per., for Plaintiffs and Appellants.

James N. Fincher, County Counsel, James E. Stone, Deputy County Counsel, and Roger S. Matzkind, Chief Civil Litigator, for Defendants and Respondents.

OPINION

KANE, J.—Under the Child Abuse and Neglect Reporting Act (Pen. Code, §§ 11164–11174.3; hereafter the Reporting Act), when a person reports known or suspected child abuse or neglect to an appropriate government agency, the identity of the person making the report is to remain confidential. (Pen. Code, § 11167, subd. (d)(1).)[1] In this case, defendant County of Merced (the County) and its employee, defendant Xiong Pha, allegedly violated that duty of confidentiality by disclosing to a parent that plaintiff Gerald Campbell, her child's preschool operator, made a report accusing her of child neglect. Although the matter was closed after a brief investigation, the parent was upset by Mr. Campbell's report and removed her children from the preschool run by plaintiffs Mr. Campbell and Antoinette Searle, causing the preschool to lose income. Plaintiffs filed a complaint against defendants for damages allegedly caused by defendants' breach of the statutory duty to keep the reporter's identity confidential. Defendants demurred on several grounds, including that the County was not liable under Government Code[2] section 815.6 (for breach of mandatory duty) and that its employee was immune from liability under section 821.6. The trial court sustained the demurrer without leave to amend. Plaintiffs appealed, arguing the complaint set forth a viable cause of action.

For the reasons explained below, we hold that the trial court correctly sustained the demurrer without leave to amend. The issue of whether the County may be liable pursuant to section 815.6 for a failure to comply with the confidentiality provision in the Reporting Act boils down to a question of legislative intent. We conclude that the County is not liable under section

---

[1] Under this statute, disclosure of the reporter's identity may "only" be made to certain enumerated agencies or persons, or when the reporter waives confidentiality or the court orders disclosure. (Pen. Code, § 11167, subd. (d)(1).)

[2] Unless otherwise indicated, all statutory references are to the Government Code.

815.6 because the Legislature, in enacting the subject confidentiality provision, did not intend to protect against the type of harm suffered by plaintiffs in this case.[3] Additionally, we agree with the trial court that the public employee was immune from liability under section 821.6. The judgment is accordingly affirmed.

## FACTS AND PROCEDURAL HISTORY

The operative pleading at the time of the demurrer hearing was the third amended complaint (the complaint), which we now summarize. Plaintiffs Gerald Campbell and Antoinette Searle were doing business as All Angels Preschool/Daycare (hereafter the Preschool), located near Los Banos, California. On July 2, 2008, Gerald Campbell, who was required by the Reporting Act to report instances of suspected child abuse or neglect,[4] contacted the child protective services department of the County to report an incident of apparent child neglect by the parent of one of the children attending the Preschool. Mr. Campbell was instructed to submit a Department of Justice form entitled, "SUSPECTED CHILD ABUSE REPORT," which he promptly did. After a brief investigation, the County employee/social worker assigned to the case, Xiong Pha, determined that the situation had stabilized and the case was closed. However, in the course of his investigation, Xiong Pha disclosed to the parent who was under investigation that Mr. Campbell was the person who had filed the report against her.

According to the complaint, Xiong Pha revealed Mr. Campbell's identity as the reporter of suspected child neglect by sending *to the child's parent* the County's form letter entitled, "EMERGENCY RESPONSE NOTICE OF REFERRAL DISPOSITION," which was supposed to be mailed to Mr. Campbell to inform him of the disposition of his report, but was mailed to the parent's address instead. A copy of the form letter was included as an exhibit to the complaint, and it showed that the name of the addressee was "Gerald Campbell [¶] All [A]ngels Preschool." However, according to the complaint, the street address listed was that of the parent in question. The form letter purported to notify Mr. Campbell: "Situation stabilized—case closed." It also thanked Mr. Campbell for "[his] report" and "diligence in looking out for the safety of children . . . ." When this information was received by the parent, there could

[3] If plaintiffs' allegations are true, as we must presume on demurrer, then plaintiffs have suffered economic damage as a consequence of defendant's violation of law. However, to the extent our opinion has highlighted a wrong without a remedy, we point out that liability against a public entity pursuant to section 815.6 is entirely a legislative matter. It is the Legislature's sole prerogative to decide whether or not to amend or clarify the Reporting Act to protect against this type of harm in future cases.

[4] Under the Reporting Act, certain persons are mandated reporters. (Pen. Code, §§ 11165.7, 11166, subd. (a).) That was the case with Mr. Campbell, due to the nature of his job as a licensed child care provider. (Pen. Code, § 11165.7, subd. (a)(10).)

be no doubt in the parent's mind that Mr. Campbell had filed the report of child neglect to the County agency handling child protective services. As a result of that disclosure, the parent pulled her children out of the Preschool, resulting in a loss of income to plaintiffs' Preschool business. The complaint for damages was framed in terms of "negligence" based on violation of a mandatory statutory duty to keep the reporter's identity confidential.

On May 13, 2010, defendants demurred to the complaint on the grounds that plaintiffs failed to state a cause of action against the County under section 815.6 and that the County employee was immune from liability under section 821.6. On July 1, 2010, at the hearing of the demurrer, the trial court agreed that the employee was immune under section 821.6 because his actions occurred in the course of an official investigation of abuse or neglect. Further, because the employee was immune, the trial court concluded that pursuant to section 815.2, subdivision (b), the County was not liable. The demurrer was therefore sustained without leave to amend and the action was dismissed.

Plaintiffs' timely appeal followed.

## DISCUSSION

### I.  Standard of Review

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### II.  No Direct Liability of the County

We begin with the alleged liability of the County. The complaint purports to state a cause of action for public entity liability based on breach of

mandatory statutory duty under section 815.6.[5] It is appropriate at this point in our discussion to review the relevant principles of public entity liability under that provision.

Preliminarily, we note the basic rule of section 815 regarding public entity liability: "Except as otherwise provided by statute: [¶] . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." This means that "*direct* tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714. Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 [7 Cal.Rptr.3d 552, 80 P.3d 656], italics added (*Eastburn*).)[6]

Section 815.6 provides a statutory basis for direct liability of a public entity (*Eastburn, supra*, 31 Cal.4th at p. 1180), and states as follows: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." As is apparent from the statutory language, there are three elements necessary to establish the liability of a public entity under section 815.6: (1) A mandatory duty imposed on the public entity by an enactment; (2) the enactment was designed to protect against the particular kind of injury that the plaintiff suffered; and (3) the plaintiff's injury was proximately caused by the public entity's failure to discharge its mandatory duty. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 [95 Cal.Rptr.3d 183, 209 P.3d 89] (*Guzman*); *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 256–257 [67 Cal.Rptr.3d 253].)

Here, the enactment that allegedly created a mandatory duty on the part of the County to keep the identity of persons who report abuse or neglect

---

[5] The complaint also refers to Civil Code section 1798.24. Plaintiffs' appeal fails to discuss this statute or make any cogent argument for its applicability here. We treat the issue as abandoned. Further, we note that Civil Code section 1798.24 is not applicable to local agencies such as counties. (Civ. Code, § 1798.3, subd. (b)(4).)

[6] We distinguish direct from vicarious liability. A public entity may be *vicariously* liable for the act or omission of its employee acting in the scope of employment as provided at section 815.2, subdivision (a). However, the public entity is not vicariously liable if the employee is immune from liability. (§ 815.2, subd. (b).)

confidential was Penal Code section 11167, subdivision (d)(1). That provision states as follows: "The identity of all persons who report under this article shall be confidential and disclosed only among agencies receiving or investigating mandated reports, to the prosecutor in a criminal prosecution or in an action initiated under Section 602 of the Welfare and Institutions Code arising from alleged child abuse, or to counsel appointed pursuant to subdivision (c) of Section 317 of the Welfare and Institutions Code, or to the county counsel or prosecutor in a proceeding under Part 4 (commencing with Section 7800) of Division 12 of the Family Code or Section 300 of the Welfare and Institutions Code, or to a licensing agency when abuse or neglect in out-of-home care is reasonably suspected, or when those persons waive confidentiality, or by court order." (Pen. Code, § 11167, subd. (d)(1).)[7]

We now consider whether direct liability under section 815.6 may be premised on Penal Code section 11167, subdivision (d)(1). As noted, the first element of the analysis under section 815.6 is that the enactment must create a mandatory obligation on the part of the public entity. "First and foremost, application of section 815.6 requires that the enactment at issue be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498 [93 Cal.Rptr.2d 327, 993 P.2d 983] (*Haggis*).) Penal Code section 11167, subdivision (d)(1), clearly meets this criterion. It requires that the identity of the reporter "shall be confidential," and it implements that confidentiality requirement by providing that the person's identity be "disclosed *only*" to particular agencies or persons listed in the statute, unless there

---

[7] Additional provisions of the Reporting Act that address confidentiality are as follows: Penal Code section 11167, subdivision (d)(2), provides: "No agency or person listed in this subdivision shall disclose the identity of any person who reports under this article to that person's employer, except with the employee's consent or by court order."

Penal Code section 11167, subdivision (e), states: "Notwithstanding the confidentiality requirements of this section, a representative of a child protective services agency performing an investigation that results from a report of suspected child abuse or neglect made pursuant to Section 11166 or Section 11166.05, at the time of the initial contact with the individual who is subject to the investigation, shall advise the individual of the complaints or allegations against him or her, in a manner that is consistent with laws protecting the identity of the reporter under this article."

Penal Code section 11167.5, subdivisions (a) and (b), provide that the *reports* required by the Reporting Act are "confidential" and may only be disclosed to specified agencies or persons.

Finally, Penal Code section 11167.5, subdivision (a), enforces confidentiality with criminal sanctions: "Any violation of the confidentiality provided by this article is a misdemeanor punishable by imprisonment in a county jail not to exceed six months, by a fine of five hundred dollars ($500), or by both that imprisonment and fine."

is either a waiver of confidentiality or a court order compelling disclosure. (Pen. Code, § 11167, subd. (d)(1), italics added.)[8]

The second element under section 815.6 is that the mandatory statutory duty must be designed to protect against a particular kind of injury. "Second, but equally important, section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered." (*Haggis, supra*, 22 Cal.4th at p. 499.) That is, the injury must be one of the consequences which the legislative body sought to prevent through imposing the alleged mandatory duty. (*Hoff v. Vacaville Unified School Dist.* (1998) 19 Cal.4th 925, 939 [80 Cal.Rptr.2d 811, 968 P.2d 522].) "Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6. [Citation.]" (*Haggis, supra*, at p. 499.) "In every case, '[t]he controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability. [Citation.]' [Citation.]" (*Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1239 [271 Cal.Rptr. 72].)

█ Our consideration of this issue requires that we ascertain the legislative purpose of the confidentiality provision. The question is: Was subdivision (d)(1) of Penal Code section 11167 designed to protect against the kind of injury that plaintiffs suffered in this case? In answering that question, we "examine the 'language, function and apparent purpose' of [the] enactment . . . ." (*Guzman, supra*, 46 Cal.4th at p. 898.) "It is well established that statutes must be given a reasonable construction that conforms to the apparent purpose and intention of the law makers [citations], and the various parts of the statutory enactment must be harmonized by considering the particular clause in the context of the whole statute." (*Nunn v. State of California* (1984) 35 Cal.3d 616, 624–625 [200 Cal.Rptr. 440, 677 P.2d 846].)

We begin with the words of the statute, but if the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, we may turn to rules of construction and other extrinsic aids, including the

---

[8] Courts apply this first element rather strictly, and generally find a mandatory duty only if the enactment imposes the duty and provides implementing measures or requires specific conduct. (*Guzman, supra*, 46 Cal.4th at p. 898; *Department of Corporations v. Superior Court* (2007) 153 Cal.App.4th 916, 932 [63 Cal.Rptr.3d 624].) Here, the affirmative obligation is to maintain the confidentiality of the reporter's identity, while the implementing measures are the provisions that such identity may only be disclosed to certain individuals or agencies.

apparent object to be achieved, the evils to be remedied, and the statutory scheme of which the statute is a part. (See, e.g., *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [3 Cal.Rptr.3d 390, 74 P.3d 166] [when the plain meaning of the statutory text is insufficient to resolve the question of its interpretation, the courts may turn to rules or maxims of construction]; *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1153–1154 [45 Cal.Rptr.3d 21, 136 P.3d 821] [when a statute is susceptible to more than one reasonable interpretation, courts look to extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, and the statutory scheme of which the statute is a part].)

Here, the wording of the statute does not explicitly reveal the purpose of the requirement to maintain the confidentiality of the reporter's identity. The requirement is imposed, but its purpose is not indicated. Since the plain wording does not answer our question of interpretation, it is appropriate to consider extrinsic aids such as the apparent objective to be achieved and the evils to be remedied by the entire Reporting Act. (*Wotton v. Bush* (1953) 41 Cal.2d 460, 467 [261 P.2d 256] [" 'the objective sought to be achieved by a statute as well as the evil to be prevented is of prime consideration in its interpretation' "].) On these points, we know that the overriding purpose of the Reporting Act, of which Penal Code section 11167 is an integral part, is "to protect children from abuse and neglect." (Pen. Code, § 11164, subd. (b).) Moreover, in 1980, the Legislature reenacted the Reporting Act in an expanded and clarified form, and expressly declared its purpose for doing so: "In reenacting the child abuse reporting law, it is the intent of the Legislature to clarify the duties and responsibilities of those who are required to report child abuse. The new provisions are designed to foster cooperation between child protective agencies and other persons required to report. Such cooperation will insure that children will receive the collective judgment of all such agencies and persons regarding the course to be taken to protect the child's interest." (Stats. 1980, ch. 1071, § 5, p. 3425.) The reenacted version of the Reporting Act included, as a new provision, the substance of the confidentiality provision that is now contained in subdivision (d)(1) of Penal Code section 11167. (Stats. 1980, ch. 1071, § 4, pp. 3420, 3423.)

Based on the above declarations of legislative intent, we infer that the essential purpose of the confidentiality provision was to foster the "cooperation" of persons who might otherwise be reluctant to report child abuse or neglect if their identities were made known. (See 65 Ops.Cal.Atty.Gen. 335, 339, 345 (1982) [so holding].) That is, it appears that the Legislature sought to encourage the full reporting of abuse or neglect by creating a shield of

confidentiality behind which the reluctant would be more willing to come forward. We note that such confidentiality is not illusory; it is enforced in the Reporting Act by criminal sanctions against those persons who violate it. (Pen. Code, § 11167.5, subd. (a).)[9]

However, we have found no indication in the legislative history of Penal Code section 11167, subdivision (d)(1), that its design or goal was *also* to prevent particular harm to those who report child abuse or neglect. Nor is that specific issue resolved by a simple reference to the legislative purpose of encouraging reporting, since the lawmakers could have reasonably concluded that such purpose was adequately served by enacting a law requiring confidentiality or by subsequently making it a crime to violate the confidentiality provisions of the Reporting Act.[10]

The silence in the language and legislative history of the subject confidentiality requirement regarding the scope of its purpose may be contrasted to other terms in the Reporting Act in which the Legislature *did* provide for protection to reporters against *particular harm*—i.e., the provision of immunity to mandated reporters from both civil and criminal liability and a fund for attorney fees in defending lawsuits filed against reporters who carry out their responsibilities under the Reporting Act. (See Pen. Code, § 11172, subds. (a), (b) & (c).)[11] In the latter provisions, the Legislature was clear and explicit in seeking to protect reporters from particular harm—namely, the harm of civil damages, criminal liability and the financial hardship of having to pay attorney fees to defend lawsuits due to reporting abuse.[12] In light of the specificity used in Penal Code section 11172 to describe the harm being protected against in that provision, it is reasonable to assume that if the Legislature, in enacting Penal Code section 11167, subdivision (d)(1), had a similar concern of protecting reporters of abuse *from particular harm*, that concern and the harm being prevented would have been mentioned in the proposed bill, the committee reports, or other legislative history materials, if not in the language of the statutory provision itself. The Legislature's silence

---

[9] This criminal sanction was added in 1983. (Stats. 1983, ch. 1082, § 1, p. 3866.)

[10] Whether the purpose of fostering the reporting of abuse would be *better* served by also seeking to protect reporters from particular types of harm—which would thereby bring the mandatory duty of Penal Code section 11167, subdivision (d)(1), within the purview of Government Code section 815.6—was a policy decision for the Legislature.

[11] The main substantive provisions of current Penal Code section 11172 were included in the 1980 reenactment of the Reporting Act (Stats. 1980, ch. 1071, § 4, pp. 3420, 3424), with the exception of present subdivision (c), which was added in 1984 (Stats. 1984, ch. 1718, § 3, p. 6225).

[12] Although we compare these two sections of the Reporting Act because both involve a form of protection for reporters, we are not suggesting that Penal Code section 11172 would be a basis for liability under Government Code section 815.6. We do not address that question here.

on that question, in contrast to its specificity in Penal Code section 11172, suggests a more limited purpose.

In passing, we note that the Legislature was *not* silent on the issue of whether a party may maintain a civil action for damages against a mandated reporter for violation of the duty to report child abuse under the Reporting Act.[13] In connection with the 1980 reenactment of the Reporting Act (of which the subject confidentiality provision was an integral part), the Legislature declared: "In repealing Sections 11161.5, 11161.6, and 11161.7 of, and in reenacting the [Reporting Act] in Article 2.5 (commencing with Section 11165) of Chapter 2 of Title 1 of Part 4 of, the Penal Code, it is not the intent of the Legislature to alter the holding in the decision of *Landeros v. Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389], which imposes civil liability for a failure to report child abuse." (Stats. 1980, ch. 1071, § 5, p. 3425, italics added.) In 2000, concerning an amendment to several sections of the Reporting Act, the Legislature similarly declared: "This act is not intended to abrogate the case of *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180 [89 Cal.Rptr.2d 768]." (Stats. 2000, ch. 916, § 34, p. 6838, italics added.) In *Alejo v. City of Alhambra*, an appellate court held there was potential liability against a public entity where its employee, a police officer, was a mandated reporter of child abuse under the Reporting Act, and had failed to comply with his mandatory duties to report and investigate an incident of child abuse. (*Alejo, supra*, at pp. 1186–1188.) Thus, in both of these instances, the Legislature recognized case law that had permitted a civil suit for injury to a child where there was a breach of the mandated reporter's duty to report child abuse. That, of course, makes perfect sense when we recall that the overriding purpose of the Reporting Act, including the mandate to report, is to protect children from abuse and neglect. (Pen. Code, § 11164, subd. (b).)

We mention the above statements of legislative intent because they argu-ably shed a ray of further light on our present inquiry. They highlight the fact that the Legislature was careful to articulate its intent, and the implications thereof, where doing so was helpful in furthering the goal of protecting children from abuse. That careful approach is seen in the Legislature's express recognition of existing case law that had permitted a cause of action premised on breach of the duty to report abuse and the clarification that the enactment or amendment was not intended to abrogate such case law. When it wanted to further the goal of protecting children from abuse by specifying

---

[13] We recognize that the test is not whether the enactment manifests the intent to create a private cause of action, but whether it created a mandatory duty to protect against a particular type of harm. (*Haggis, supra*, 22 Cal.4th at p. 500.)

the scope of its intent, which in the instances noted above was to ensure the viability of certain causes of action, it did so. Against that backdrop, we may refine the point we made earlier above: That is, if the Legislature had intended the confidentiality provision (in Pen. Code, § 11167, subd. (d)(1)) to protect reporters from suffering particular types of harm, it would have so indicated—*especially* if it thought that by protecting against such particular harm it would significantly further the purpose of protecting children from abuse. Yet it did not indicate any intention to protect reporters against harm.

■    For the reasons discussed above, we conclude that the confidentiality provision set forth in Penal Code section 11167, subdivision (d)(1), was enacted to foster cooperation and to encourage reporting. (See Stats. 1980, ch. 1071, § 5, p. 3425 ["The new provisions are designed to foster coopera- tion between child protective agencies and other persons required to re- port."].) Its precise goal was to encourage reporting by mandating confi- dentiality, not to protect against particular types of harm that may befall those who report abuse if their identity became known.[14] Although the risk of harm to those who report abuse or neglect is undoubtedly minimized by

---

[14] Our review of the legislative purposes of two related confidentiality provisions within the Reporting Act does not alter our conclusion. One such provision was the addition in 1983 of Penal Code section 11167.5, which among other things extended confidentiality to the reports of child abuse and made it a crime to violate the confidentiality provisions of the Reporting Act. (Stats. 1983, ch. 1082, § 1, p. 3866.) In addition to obviously furthering the goal of encouraging reporting, the only specific purpose mentioned in the legislative history of this enactment (referred to as Assem. Bill No. 607 (1983–1984 Reg. Sess.)) was that it would bring state laws regarding confidentiality in child abuse reporting up to federal standards to assure the continuation of federal funding under the federal Child Abuse and Prevention Treatment Act, 42 United States Code Service, section 5101 et seq. (See, e.g., Assemblyman Frank Vicencia, author of Assem. Bill No. 607 (1983–1984 Reg. Sess.), letter to Governor Deukmejian, Sept. 13, 1983, urging its passage based on the federal funding issue.)

The other measure addressing confidentiality was a 1986 amendment to the Reporting Act that prohibited specified agencies and persons authorized to receive information regarding reports of child abuse from disclosing the identity of a reporter of child abuse to the reporter's *employer*, except with the employee's consent or by court order. (Stats. 1986, ch. 1289, § 3, p. 4538, referred to as Assem. Bill No. 1981 (1985–1986 Reg. Sess.).) It also specified that when internal procedures exist within an organization to facilitate the reporting of abuse, such internal procedures shall not require any employee required to report child abuse to disclose his or her identity to the employer. (*Ibid.*) These added requirements are presently found at Penal Code section 11167, subdivision (d)(2), and section 11166, subdivision (i)(2). The essential purpose of the amendment, as described in legislative committee reports prior to its passage, as well as in statements by the bill's author, was "to enhance the reporting process and remove obstacles, which might discourage employees from reporting instances of child abuse." (Sen. Com. on Judiciary, Rep. on Assem Bill No. 1981 (1985–1986 Reg. Sess.) June 23, 1986; see, e.g., Sen. Rules Com., Rep. on Assem. Bill No. 1981 (1981–1982 Reg. Sess.) June 18, 1986; Assemblyman Norman S. Waters, author of Assem. Bill No. 1981 (1981–1982 Reg. Sess.), letter to Governor Deukmejian, Aug. 25, 1986.) Although it also brought about an incidental benefit of helping to prevent the occurrence of reprisals against employees (the author's letter to the Governor mentioned that one such incident had occurred), it is clear that the principal purpose and intent of the measure was simply to remove an obstacle that might

such confidentiality, that appears to be an incidental benefit of the confidentiality provision, not its essential purpose.[15] Therefore, we conclude that the County is not liable under section 815.6. (*Haggis, supra,* 22 Cal.4th at p. 499 [if the benefit is " 'incidental' " to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under § 815.6].)

## III.  *Immunity of County Employee*

The complaint also alleged that the County employee who investigated the reported neglect, Xiong Pha, breached a duty of care owed to plaintiffs by negligently or otherwise wrongfully disclosing the identity of the reporter. Under section 820, subdivision (a), "[e]xcept as otherwise provided by statute . . . , a public employee is liable for injury caused by his act or omission to the same extent as a private person." The trial court held that the County employee was immune from such liability pursuant to section 821.6 because the alleged wrongdoing occurred in the course of an official investigation of child abuse or neglect. We agree with that conclusion.

■ Section 821.6 provides that a public employee "is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The statute has been given an expansive interpretation to further the rationale for the immunity, which is to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1043, 1048 [55 Cal.Rptr.3d 158]; *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1292 [89 Cal.Rptr.2d 60].) Acts by a public employee that are preparatory to a potential institution of judicial proceedings, including acts in the course of an investigation of alleged wrongdoing, are covered by the statutory immunity. (*Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1547 [90 Cal.Rptr.3d 381]; *Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th 456, 467–468 [66 Cal.Rptr.3d 157] [immunity covers acts in course of investigating child abuse]; *Amylou R. v. County of Riverside* (1994)

otherwise discourage reporting on the part of employees (i.e., an employee's fear of the employer's reaction) by preventing disclosure of a reporter's identity to his or her employer. That is entirely consistent with what we have said herein regarding the provision at issue in this appeal (i.e., Pen. Code, § 11167, subd. (d)(1)).

[15] There are risks of harm to those who report abuse. In addition to the economic harm suffered by plaintiffs in this case, a person reporting abuse could become the subject of various sorts of threats or reprisals. The question of whether to protect against that risk of harm pursuant to section 815.6, and whether to do so in connection with the statutory requirement that public entities and public employees keep the reporter's identity confidential, was (and is) a matter for the Legislature to decide.

28 Cal.App.4th 1205, 1209–1210 [34 Cal.Rptr.2d 319].) "Because investigation is 'an essential step' toward the institution of formal proceedings, it 'is also cloaked with immunity.' " (*Amylou R. v. County of Riverside, supra,* at p. 1210.) Furthermore, the immunity under section 821.6 extends to communications made by the employee that have a connection with the investigation or prosecution process. (*Ingram v. Flippo, supra,* at pp. 1292–1293; *Cappuccio, Inc. v. Harmon* (1989) 208 Cal.App.3d 1496, 1499 [257 Cal.Rptr. 4].) "Acts undertaken in the course of an investigation, including press releases reporting the progress or results of the investigation, cannot give rise to liability." (*Gillan v. City of San Marino, supra,* at p. 1048.)

In *Kayfetz v. State of California* (1984) 156 Cal.App.3d 491 [203 Cal.Rptr. 33], the Board of Medical Quality Assurance and its diversion program administrator published an official report concerning the plaintiff's participation in a drug rehabilitation program. The plaintiff sued, alleging that the state and its employee violated required confidentiality. The Court of Appeal concluded that the employee was immune under section 821.6 because the report was made in the course of an administrative proceeding that had not been dismissed, and its publication was authorized by statute as a part of the ongoing proceeding and diversion program. (*Kayfetz v. State of California, supra,* at pp. 496–498.)

Applying the broad interpretation of section 821.6 reflected in the above precedents to the present case, we have no doubt that the County employee was immune. It is clear from the content of the form letter sent by the County employee entitled, "EMERGENCY RESPONSE NOTICE OF REFERRAL DISPOSITION" that it was directly related to the investigative process, since its express purpose was to notify the person making the report of the result and disposition of the investigation. In essence, it was the last official act of the investigative process. Moreover, the investigating agency was required by statute to inform the person reporting the child abuse or neglect "of the results of the investigation and of any action the agency is taking with regard to the child or family." (Pen. Code, § 11170, subd. (b)(2).) That was precisely what the letter or notice purported to do. Although it was unfortunately sent to the wrong address and thereby breached the confidentiality requirement by divulging Mr. Campbell's identity, it was clearly an action within the scope of the employee's employment that was taken in connection with the investigation of alleged child neglect. Therefore, the employee was immune from liability pursuant to section 821.6.[16]

---

[16] As a result of the employee's immunity, the County is not vicariously liable for the employee's conduct. (§ 815.2, subd. (b).)

## DISPOSITION

The judgment of dismissal is affirmed. Costs on appeal are awarded to defendants.

Levy, Acting P. J., and Poochigian, J., concurred.