Filed 4/28/15  Harrington-Wisely v. California CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| GAIL MARIE HARRINGTON-WISELY et al., | B248565 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC227373) |
| v. |  |
| THE STATE OF CALIFORNIA et al., |  |
| Defendant and Respondent. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Victoria G. Chaney, Judge.  Affirmed in part and reversed in part.

Kaye, McLane, Bednarski & Litt and Barrett S. Litt for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Jonathan L. Wolff, Senior Assistant Attorney General, Thomas S. Patterson and Jose A. Zelidon-Zepeda, Deputy Attorneys General, for Defendants and Respondents.

_____

Gail Marie Harrington-Wisely and several additional plaintiffs (collectively Wisely) sued the State of California, the California Department of Corrections (now the California Department of Corrections and Rehabilitation) (CDC), the California State Prison at Lancaster and five senior prison officials (collectively government defendants) in a class action complaint alleging violations of state and federal constitutional rights and several common law tort claims relating to the use of a backscatter X-ray machine, the Secure 1000, to scan visitors at 11 California prisons as a means of detecting concealed weapons and other contraband. After the trial court granted summary adjudication on 10 causes of action for damages in favor of the government defendants, the parties entered into a settlement and stipulated judgment, thereby avoiding trial on Wisely's claims for equitable relief. On May 24, 2013 all remaining claims, including open issues reserved in the earlier stipulated judgment, were dismissed pursuant to a further stipulation; and a final judgment was entered. Wisely now appeals several aspects of the trial court's rulings on the damage claims. We reverse in part as to the State and other public entity defendants, affirm as to the individual defendants and remand for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *California State Prisons' X-ray and Search of Visitors*

From 1999 through March 2001 eleven institutions operated by the CDC required all visitors to pass through the Secure 1000 to detect weapons and other contraband, such as money and narcotics. The Secure 1000 discharged low-level backscatter X-rays that penetrated a few centimeters into a person's skin, producing a spectral-like computer image of the body, including an outline of breasts, genitalia and folds of skin. If an image showed a gray or darkened area that could not be conclusively identified, visitors were required to undergo an unclothed visual inspection and possibly a visual body cavity search (called a "proximate search"). Darkened areas were found to include feminine hygiene products, breast implants, brassiere underwire and diapers. Visitors who did not agree to be screened with the Secure 1000 were denied access to the prison for that day and told they may be subject to unclothed visual inspections on future visits.

2

2. *The Initial Complaint; Suspension of Use of the Secure 1000*

On March 30, 2000 Wisely filed a class action complaint alleging violations of state and federal constitutional rights to privacy and several tort claims relating to the use of the Secure 1000. On March 23, 2001, after Wisely had moved for a preliminary injunction, the CDC directed the institutions to discontinue use of the Secure 1000 until further notice. The CDC agreed it would provide 90 days' notice before resuming use of the Secure 1000 to give Wisely time to renew her motion for a preliminary injunction.

3. *The Fifth and Sixth Amended Complaints and Motions to Strike*

On June 6, 2003 Wisely filed a fifth amended complaint, which included claims under title 42 United States Code section 1983 for violation of visitors' federal constitutional rights; a claim for violation of the right to privacy recognized by the California Constitution article I, section 1; a claim for interference by threats, intimidation or coercion with the exercise or enjoyment of constitutional or statutory rights under Civil Code section 52.1, including treble damages made available pursuant to Civil Code section 52; claims for violation of mandatory duties under Government Code section 815.6; and claims for negligence and negligent supervision.[1] The complaint sought both damages and equitable relief. Wisely alleged, among other things, the State violated prison visitors' constitutional rights by X-raying them as a condition of entry into the prison without reasonable suspicion the visitors were carrying contraband or posed a threat to prison security.[2]

---

[1] The amended complaint also asserted claims against the manufacturers of the Secure 1000, which were ultimately resolved in their favor on summary judgment. Wisely does not challenge the dismissal of those claims (the eleventh through fourteenth causes of action in the eighth amended complaint).

[2] On October 15, 2004 the trial court certified a class comprised of visitors scanned with the Secure 1000 from approximately March 19, 1999 through March 23, 2001 as a condition of a prison visit. Although Wisely had moved to certify a class based on visitors scanned with the Secure 1000 and a subclass of visitors subsequently required to undergo strip/body cavity searches, the class was instead divided into subclasses based on the prison visited "because policies vary from prison to prison" and the court was "not satisfied common issues predominate[d] across the entire prison system."

3

On October 24, 2003 the trial court granted the government defendants' motion to strike references to damages under Civil Code section 52, subdivision (a), holding a state prison is not a business establishment, a prerequisite to recovering damages under the statutory scheme.

On November 18, 2003 Wisely filed a further amended complaint, removing reference to treble damages under Civil Code section 52, subdivision (a), but seeking civil penalties and exemplary damages under Civil Code section 52, subdivision (b). On February 4, 2004 the court granted the government defendants' motion to strike all claims for damages (including civil penalties characterized as damages) under Civil Code section 52, subdivision (b).

4. *The Motions for Summary Adjudication; the Motions for Reconsideration*

Following additional motion and pleading practice by the parties, on July 1, 2005 the court granted the government defendants' motions for summary adjudication of the first 10 causes of action seeking damages in the operative eighth amended complaint.[3] Wisely does not challenge the trial court's rulings foreclosing claims for violation of federal constitutional rights (the first, second and third causes of action), violation of mandatory duties based on provisions of the California Code of Regulations (the seventh cause of action) or intentional infliction of emotional distress (the eighth cause of action). As to the remaining five causes of action at issue in this appeal, the court found violence or intimidation by threat of violence was required to establish a violation of Civil Code section 52.1 (the fifth cause of action), and it was undisputed no violence or threat of violence was used to compel visitors to be scanned with the Secure 1000. With respect to violation of Government Code section 815.6 (the seventh cause of action), the court found none of the predicate statutory or constitutional violations (for example, violation of the right to privacy or Civil Code section 52.3) created mandatory duties. As to the remaining causes of action for violation of the right to privacy under the California

---

[3]     The eighth amended complaint, filed in January 2005, added plaintiff and subclass allegations after the trial court had granted Wisely's motion for class certification.

4

Constitution (fourth cause of action), negligence (ninth cause of action) and negligent supervision and retention (tenth cause of action), the court found the government defendants were immune from liability under Government Code section 820.2 because Wisely's damages claims were all based on acts requiring the exercise of discretion. The court denied summary adjudication of the final cause of action asserted against the government defendants (the fifteenth cause of action), styled as a taxpayer's suit seeking declaratory and injunctive relief.

On July 7, 2005 Wisely moved for clarification or reconsideration contending, in part, the court had failed to consider whether the State was vicariously liable for the ministerial conduct of line staff who had conducted the scans—conduct not protected by discretionary immunity. In opposition the government defendants argued liability based on respondeat superior was not available to Wisely because she had sued only policy makers and had pleaded facts regarding policies, not the ministerial conduct of line officers actually conducting the scans. Wisely replied she was not required to identify or name low-level employees to maintain an action against the State based on a respondeat superior theory and the government defendants' argument they did not know Wisely had intended to assert such a theory was disingenuous. The court denied Wisely's motion for reconsideration.

Although it denied Wisely's motion, the court sua sponte ordered reconsideration of issues related to the cause of action for negligent supervision and training and the request for injunctive relief. Regarding negligent supervision, the court had found there was no factual allegation or evidence any individually named defendant had personally trained or hired anyone or had personally used the Secure 1000 to scan a visitor. The court sought additional briefing whether Wisely contended (and had properly alleged) the named defendants had personally trained or hired anyone; if Wisely had not alleged it, should the government defendants' motion be treated as one seeking judgment on the pleadings and granted with leave to amend; or if the amended complaint adequately stated the cause of action and defendants had failed to carry their burden on summary judgment, were the defendants nevertheless immune from liability.

5

At a hearing on August 19, 2005 the trial court asked Wisely's attorney, Barrett Litt, to identify allegations in the eighth amended complaint indicating the State or CDC was liable for the misconduct of line staff—that is, the people actually doing the scanning and intake.[4] Litt contended the complaint alleged fictitiously named defendants one through 20 were California public entities responsible for the unlawful policies and *practices* alleged in the complaint and argued, in any event, the State is generally liable for the acts of its agents under the Government Claims Act (Gov. Code, § 810 et seq.) and there is no requirement a respondeat superior theory be specifically alleged or individual line staff be named as defendants. Litt further argued, although the invasion of privacy claim had been the focus of Wisely's damages claim, "throughout the case we've raised several issues: They proximately searched people when they shouldn't, they had the monitor in view where it shouldn't be, they had cross-gender scanning when they shouldn't." "[O]ur backup position has been that basically the way they did this was wrong. So even if we lost on the constitutionality of this scanning . . . then we still have the issue of the fact that they did it wrong in various ways." The court acknowledged "there's been two levels of issues that have been discussed frequently in our status conferences, and the focus of discovery has been—and for you the higher issue, the more important issue, the constitutionality, and then there has been a less important issue but there nonetheless, and I know discovery has been done on that, which is your claim that the scans were done somehow improperly . . . . But that's true, I've been hearing about that for a goodly long time."

In a September 22, 2005 ruling the court reaffirmed its order granting summary adjudication "with the clarification that plaintiffs' class claims for injunctive and declaratory relief survive."

---

4   Although the court was primarily focused on whether the complaint sufficiently alleged a respondeat superior theory for the negligent supervision claim, its questions during the hearing occasionally encompassed the broader question whether the amended complaint alleged any misconduct by the line staff conducting the scans. Because Wisely argues on appeal the State is liable on a respondeat superior theory for all of the state law claims, we focus on the broader discussion of the allegations in the amended complaint.

5. *The Settlement and Request for an Order Entering Judgment*

On March 7, 2006, on the eve of trial on Wisely's claims for injunctive relief, the parties reached a settlement and filed a stipulation and request for an order entering final judgment, which was intended to permit an immediate appeal by Wisely from the rulings granting summary adjudication as to her damage claims. The stipulated judgment barred further use of the Secure 1000 and created a protocol to govern further employment of screening devices in California prisons, while also preserving the trial court's jurisdiction to resolve issues concerning use of backscatter or similar technology if the CDC decided to reinstitute that manner of scanning at any time during the following seven years.[5] The trial court signed the stipulation and order; and Wisely appealed from the judgment, challenging several aspects of the damages rulings.

We dismissed the appeal, holding the judgment was in effect a nonappealable interlocutory decision because it left open for determination by the trial court several constitutional and statutory issues related to Wisely's claim for injunctive relief if the CDC decided to use backscatter technology. (*Harrington-Wisely v. State of California* (2007) 156 Cal.App.4th 1488, 1495-1496.) On May 24, 2013, more than seven years after the 2006 stipulation and request for an order entering final judgment, all remaining claims and open issues were dismissed; and a final, appealable judgment was entered.

---

[5] Following entry of the stipulated judgment requested by the parties, described as a "form of consent decree," Wisely moved for an award of attorney fees and costs as the prevailing party. The trial court denied the motion, concluding Wisely's complaint had not been the catalyst for the decision to suspend use of the backscatter X-ray. Wisely subsequently renewed her motion based on intervening legal authority. The renewed motion was also denied. Because we reverse the underlying judgment and remand for further proceedings on several of Wisely's damages claims, we necessarily reverse the order denying her motion for attorney fees, as well. (See *Lafferty v. Wells Fargo Bank* (2013) 213 Cal.App.4th 545, 572; *Gilman v. Dalby* (2009) 176 Cal.App.4th 606, 620.) In doing so, we express no view on the merits of Wisely's specific arguments. Wisely's requests for judicial notice of documents relating to her argument she is entitled to attorney fees are denied.

**CONTENTIONS**

Wisely contends the trial court improperly granted summary adjudication as to her claim under Civil Code section 52.1 because that section does not require proof of violence or a threat of violence, as the court ruled; there were triable issues of fact that precluded summary adjudication on her cause of action under Government Code section 815.6 for violation of mandatory duties created by the privacy provision of the California Constitution (but not the separate cause of action for violation of mandatory duties purportedly created by provisions of the California Code of Regulations); and the government defendants failed to meet their burden of demonstrating entitlement to summary adjudication on the causes of action for violation of the state constitutional right to privacy, negligence and negligent supervision under a theory of vicarious liability (Gov. Code, § 815.2) based on nondiscretionary activities of CDC line employees.

**DISCUSSION**

1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Schachter v. Citigroup, Inc*. (2009) 47 Cal.4th 610, 618; *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) The evidence must be viewed in the light most favorable to the nonmoving party. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 703; *Schachter,* at p. 618.)

When a defendant moves for summary judgment in a situation in which the plaintiff would have the burden of proof at trial by a preponderance of the evidence, the defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. Alternatively, the defendant may present evidence to "'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff." (*Aguilar v. Atlantic Richfield, Co.* (2001) 25 Cal.4th 826, 853; see Code

8

Civ. Proc., § 437c, subd. (p)(2).) "'"". . . The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish,'" the elements of his or her cause of action."'"" (*Ennabe v. Manosa*, *supra*, 58 Cal.4th at p. 705; accord, *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [same].) Once the defendant's initial burden has been met, the burden shifts to the plaintiff to demonstrate, by reference to specific facts, not just allegations in the pleadings, there is a triable issue of material fact as to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

A defendant may also move for summary judgment on the ground there is an affirmative defense to the action. (Code Civ. Proc., § 437c, subds. (*o*)(2), (p)(2).) Once the defendant meets the burden of establishing all the elements of the affirmative defense, the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense. (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484-1485; *Mirzada v. Department of Transportation* (2003) 111 Cal.App.4th 802, 806-807; see *Huynh v. Ingersoll-Rand* (1993) 16 Cal.App.4th 825, 830.)

2. *Summary Adjudication Was Properly Granted on Wisely's Cause of Action for Violation of Civil Code Section 52.1 Because There Was No Actionable Coercion*

Civil Code section 52.1, also known as the Tom Bane Civil Rights Act (Bane Act), provides a state law remedy for constitutional or statutory violations accomplished through the use of threats, intimidation or coercion. Subdivision (a) of section 52.1 authorizes the Attorney General or any district attorney or city attorney to bring a civil action for injunctive and other appropriate equitable relief "in order to protect the peaceable exercise or enjoyment of the right or rights secured." Subdivision (b) creates a private right of action for individuals whose rights have "been interfered with, or attempted to be interfered with, as described in subdivision (a)." (Civ. Code, § 52.1, subd. (b).) "The essence of a [Civil Code section 52.1] claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation, or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force

9

the plaintiff to do something that he or she was not required to do under the law." (*Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 883; see *Jones v. Kmart Corp.* (1998) 17 Cal.4th 329, 334.)

The trial court granted summary adjudication for the government defendants on Wisely's Bane Act claim, finding the undisputed evidence established that no violence or threat of violence had been used to compel visitors to be scanned with the Secure 1000 and ruling that a violation could not be proved by evidence of coercion. Wisely contends that the trial court erred and that a violation of the Bane Act may also be predicated on coercion, "defined as 'to restrain or constrain by legal authority,' or 'to compel to do something by the use of power.' *Webster's New World Dictionary*, Third College Edition, New York (1988)." Wisely asserts the requirement visitors submit to scanning by the Secure 1000 as a condition of visitation was "clearly a form of coercion" within the ambit of the Bane Act.

We agree the trial court erred in interpreting the Bane Act to require proof of violence or a threat of violence. Nonetheless, its order granting summary adjudication must be affirmed because Wisely failed to present any evidence in opposition to the motion demonstrating her claim was predicated on actionable coercion under the statute.

In concluding the Bane Act requires proof of violence or a threat of violence, the trial court relied on *Cabesuela v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101, holding the statute must be read in conjunction with Civil Code section 51.7, the Ralph Civil Rights Act, providing a right to be free from violence or threat of violence committed because of discriminatory classifications—commonly referred to as hate crimes. (See *Cabesuela*, at p. 111 ["[I]t is clear that to state a cause of action under section 52.1 there must first be violence or intimidation by threat of violence. . . . [T]he violence or threatened violence must be due to plaintiff's membership in one of the specified classifications set forth in Civil Code section 51.7 or a group similarly protected by constitution or statute from hate crime."]; *Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1809.) However, more than a year prior to the trial court's ruling, the Supreme Court in *Venegas v. County of Los Angeles* (2004)

10

32 Cal.4th 820 had held, although the Bane Act "was adopted 'to stem a tide of hate crimes,'" the statute is not "limited to such crimes" and does not require plaintiffs to demonstrate defendants "had a discriminatory purpose . . . that is, that they committed an actual hate crime." (*Venegas*, at p. 843; see *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 956 (*Shoyoye*) ["[n]otably, the statute does not require a plaintiff to allege the defendant acted with discriminatory animus or intent based upon the plaintiff's membership in a protected class of persons"]; see also *Quezada v. City of Los Angeles* (2014) 222 Cal.App.4th 993, 1007.) The Court explained the Legislature in 2000 amended Civil Code section 52.1, subdivision (g), which had already provided the statute is independent of any other remedy or procedure, to make it clear the *Bocatto* court, upon which the *Cabesuela* court had relied, misconstrued Civil Code section 52.1 when it held the statute must be read in conjunction with Civil Code section 57.1. (*Venegas*, at p. 842; see generally Civ. Code, § 52.1, subd. (g) ["[a]n action brought pursuant to this section is independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law, including, but not limited to, an action, remedy, or procedure brought pursuant to Section 51.7"].)

The *Venegas* Court did not need to address the contours of the "coercion" element of the Bane Act, the question now before us. (See *Venegas*, *supra*, 32 Cal.4th at p. 843 ["we need not decide here whether section 52.1 affords protections to every tort claimant, for plaintiffs in this case have alleged unconstitutional search and seizure violations extending far beyond ordinary tort claims"].) In *Shoyoye*, *supra*, 203 Cal.App.4th 947 our colleagues in Division Four of this court confronted one aspect of that issue in a case involving the detention of a county jail inmate because of a clerical error more than two weeks after he should have been released. The court framed the issue as involving two related questions: First, whether the statute proscribes only intentional interference with a protected right or also incidental interference brought about by negligent conduct; and second, when coercion is inherent in the constitutional violation alleged, as it is in an unreasonably prolonged detention, "is the statutory requirement satisfied or does the

11

statute require a showing of coercion independent from the coercion inherent in the wrongful detention itself?" (*Id.* at p. 958.)

Regarding the "type of interference," the *Shoyoye* court held "[t]he statutory framework of [Civil Code] section 52.1 indicates that the Legislature meant the statute to address interference with constitutional rights involving more egregious conduct than mere negligence." (*Shoyoye*, *supra*, 203 Cal.App.4th at p. 958; see *ibid.* ["apparent purpose of the statute is not to provide relief for an overdetention brought about by human error rather than intentional conduct"].) "The act of interference with a constitutional right must itself be deliberate or spiteful." (*Id.* at p. 959.) As for the second question the court held, when "coercion is inherent in the constitutional violation alleged, i.e., an overdetention in County jail, the statutory requirement of 'threats, intimidation, or coercion' is not met. The statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." (*Ibid.*)[6]

Earlier this year our colleagues in the Third District examined, and reaffirmed, the *Shoyoye* court's analysis in *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, a case involving a challenge to an ordinance prohibiting camping on public or private

---

[6]    The *Shoyoye* court was guided in part by a federal district court case, *Gant v. County of Los Angeles* (C.D. Cal. 2011) 765 F.Supp.2d 1238,1253, affd. in part and revd. in part in (9th Cir. 2014) 2014 U.S.App. Lexis 22192 and (9th Cir. 2014) 772 F.3d 608, that in turn had relied on Massachusetts authority because the Bane Act "was modeled closely on the Massachusetts Civil Rights Act of 1979." (*Shoyoye*, *supra*, 203 Cal.App.4th at p. 960.) Massachusetts authority provides a far more appropriate definition of "coercion" than the dictionary definition quoted by Wisely. In *Buster v. George W. Moore, Inc.* (2003) 438 Mass. 635 [783 N.E.2d 399], the Supreme Judicial Court of Massachusetts explained coercion could be physical, moral or even economic: "[A]ctionable coercion is 'the application to another of such force, either physical or *moral*, as to constrain him to do against his will something he would not otherwise have done' (emphasis added). [Citation.] It is 'the active domination of another's will' [Citation.] Thus, we have recognized that coercion may take various forms, and we have not limited its scope to actual or attempted physical force. [Citations.] For example, we have suggested that coercion may be found where one party deprives another of rights due under a contract, [citation], or makes it impossible, due to sexual harassment, for another to continue her employment, [citation]." (*Id.* at pp. 646-647.)

property without a permit. Plaintiffs included homeless individuals who contended the ordinance violated their constitutional rights to travel, equal protection and due process. After the trial court sustained the City of Sacramento's demurrer to the cause of action for violation of Civil Code section 52.1, plaintiffs argued on appeal the first amended complaint "sufficiently allege[d] 'coercion' because City police officers arrested plaintiffs and an arrest is inherently coercive." (*Allen*, at p. 66.) The *Allen* court rejected that argument, holding "a wrongful arrest or detention, without more," does not state a cause of action under the Bane Act. (*Id.* at p. 69.) "Similar to *Shoyoye*, this case involves an allegedly unlawful arrest but no alleged coercion beyond the coercion inherent in any arrest. (Cf. *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 978 [although coercion is inherent in any arrest, where an arrest is unlawful and excessive force is applied, there is coercion independent of the wrongful detention].) Consistent with *Shoyoye*, we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1." (*Allen*, at p. 69.) Significantly, although both *Shoyoye* and *Allen* "involve[d] an allegedly unlawful arrest but no alleged coercion beyond the coercion inherent in any arrest," *Allen* considered intentional conduct that allegedly violated plaintiff's rights, not negligence or human error as in *Shoyoye*.

We have no reason to disagree with the analysis in *Shoyoye*[7] and *Allen*: The coercion necessary for a Bane Act claim must be independent of the coercion, if any,

_____

7    We are aware, as Wisely points out, that there are United States District Court cases—decided prior to *Allen*—that disagree with *Shoyoye* (see, e.g., *Bass v. City of Fremont* (N.D. Cal., Mar. 8, 2013, No. C12-4943 TEH) 2013 U.S. Dist. Lexis 32590 at pp. *13-*14 ["Defendants urge upon the court a broad reading of *Shoyoye*—one that would, perversely, preclude any [Civ. Code, §] 52.1 action in which the underlying statutory or constitutional violation involved 'threats, intimidation, or coercion.' This reading is contrary to the plain language of the statute, which specifically provides for a civil action based on interference with a right 'by threats, intimidation, or coercion.' [Citation.] [¶] A broad reading of *Shoyoye* is also contrary to *Venegas* . . . ."]) or that narrowly read *Shoyoye*'s holding as limited to situations in which the rights violation occurred through negligence, rather than an intentional act (see, e.g., *Davis v. City of San Jose* (N.D. Cal., Sept. 24, 2014, No. 14-cv-02035-BLF) 2014 U.S. Dist. Lexis 136015 at p. *17 ["*Shoyoye* court limited its denial of Bane Act relief to cases where the

13

inherent in the constitutional violation itself.  Citing *Walker v. City of Lakewood* (9th Cir. 2001) 272 F.3d 1114, Wisely contends the coercion in the instant case satisfies that requirement.  She argues the CDC had a policy of subjecting visitors who refused to be scanned with the Secure 1000 to even more intrusive strip and/or visual body cavity searches for an indefinite period of time as a condition of future visitation.  (See *id.* at p. 1130 [evidence of coercion or threats under federal and California fair housing acts included city's threat to independent fair housing services provider that it would not renew contract and would withhold payments if provider did not apologize to apartment complex owner for facilitating lawsuit by tenant and former tenants alleging racial discrimination and harassment].)

If Wisely had alleged and presented evidence in opposition to the motion for summary adjudication that the CDC had a policy to penalize visitors who refused to submit to a scan by subjecting them for an indefinite period to even more intrusive searches on future visits, even if they were subsequently willing to be scanned, and that visitors were told of this policy as a means of coercing their "consent" to the scan, we would reinstate her Bane Act claim.  But her evidentiary presentation fell well short of this threshold.

To be sure, in opposition to the government defendants' motion Wisely proffered as an undisputed fact, "Pursuant to CDC policy, if an inmate visitor refused to submit to a Secure 1000 search, that would result in a proximate body and/or visual cavity search for

---

constitutional or statutory violation 'occurs because of mere negligence rather than a volitional act intended to interfere with the exercise of a constitutional right'"].)  Other district court cases, however, follow *Shoyoye*.  (See, e.g., *Ortega v. San Diego Police Dept.* (S.D. Cal., Nov. 14, 2014, No. 13cv87-LAB (JMA)) 2014 U.S. Dist. Lexis 160572 at p. *31-*32 [no dispute officer had probable cause to stop plaintiff or arrest decision was lawful; although plaintiffs raised genuine factual dispute whether officer used excessive force, "they have not shown (nor attempted to show) that Officer McCarthy interfered with Victor's exercise or enjoyment of *separate* rights covered by the Bane Act"]; *Muhammad v. Garrett* (E.D. Cal., Dec. 11, 2014, No. 1:12-cv-01199-JLT) 2014 U.S. Dist. Lexis 171744 at pp. *18-*19 [plaintiff alleged officers used excessive force when he was arrested].)  Of course, none of these federal decisions is binding on us.

14

all further visits to an inmate for an indefinite measure of time, determined at the discretion of the prison staff." However, the evidence cited to establish the existence of such a policy—a regulation governing the conditions for visiting inmates and excerpts from various prison operational manuals—does not support her characterization of the CDC policy. Then-in-effect California Code of Regulations, title 15, section 3177, subdivision (c)(3)(a), generally provided, "Refusal to submit to a requested search shall result in the visitor not being permitted to visit on that day. Future visits may be conditioned upon the visitor's willingness to submit to a search prior to each visit for as long as prison officials have reasonable cause to believe that the visitor will attempt to smuggle contraband into the institution." The prison operational manuals were consistent with this, and some further provided the type of search to be conducted would be based upon reasonable cause. Nothing in the language of the quoted policy or operational manuals suggests the arbitrary or punitive government action described in Wisely's opposition papers. Moreover, there was no allegation in the operative pleading, let alone any evidence in opposition to summary adjudication, that visitors were told they would be subjected to strip and body cavity searches on future visits if they refused to be scanned with the Secure 1000 even if they were subsequently willing to be scanned. Accordingly, on this record there was no actionable coercion under the Bane Act, and the order granting summary adjudication of the fifth cause of action for violation of Civil Code section 52.1 must be affirmed.[8]

_____

[8] The government defendants' argument Wisely cannot state a Bane Act claim because state prisons are not business establishments is without merit. Civil Code section 52.1, subdivision (b), permits any person whose exercise of rights has been interfered with, or attempted to have been interfered with, by the specified improper means to bring an action for compensatory damages against any individual or entity. That section also permits an aggrieved party to seek treble damages, civil penalties and attorney fees under Civil Code section 52. In light of our conclusion there is no actionable Bane Act claim, we need not address the secondary issues whether a party may only seek damages or penalties under Civil Code section 52 from a business establishment and whether a state prison qualifies as a business establishment.

15

3. *Summary Adjudication Was Properly Granted on Wisely's Sixth Cause of Action for Violation of Government Code Section 815.6 Because the State Constitutional Right to Privacy Does Not Impose a Mandatory Duty on Government Officials*[9]

Public entities are generally not liable for injuries they cause, either by act or omission. (Gov. Code, § 815; see *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897 (*Guzman*).)[10] The Government Claims Act provides limited exceptions to this general rule. (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127-1128 [""""intent of the [Government Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances""""].) Under the Act, public entities cannot be held liable for injuries arising from their acts or omissions except as provided by statute. (Gov. Code, § 815.)

One such exception to the general no-liability rule, set forth in Government Code section 815.6, permits a finding of liability when a public entity's failure to discharge "a mandatory duty imposed by an enactment" has proximately caused an injury within the enactment's protective purpose "unless the public entity establishes that it exercised reasonable diligence to discharge the duty."[11] (See *Eastburn v. Regional Fire Protection*

---

[9]    Wisely's sixth and seventh causes of action for violating mandatory duties were not asserted against any individual defendant. As discussed, Wisely appeals only from the grant of summary adjudication under Government Code section 815.6 alleging violations of mandatory duties imposed by the California Constitution (her sixth cause of action), not the parallel claim alleging violation of duties purportedly imposed by the California Code of Regulations (her seventh cause of action).

[10]    Government Code section 815 provides, "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person. [¶] (b) The liability of a public entity established by this part . . . is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

[11]    Government Code section 815.6 provides, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately

16

*Authority* (2003) 31 Cal.4th 1175, 1178 (*Eastburn*) [Gov. Code, § 815.6 imposes direct liability for breach of statutory mandatory duty].)

"A private cause of action lies against a public entity only if the underlying enactment sets forth the elements of liability set out in [Government Code] section 815.6." (*Guzman*, *supra*, 46 Cal.4th at p. 897.)[12] Those elements are "'[f]irst and foremost, . . . the enactment at issue [must] be *obligatory*, rather than merely discretionary or permissive, in its direction to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. . . .' Courts have construed this first prong rather strictly, finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" (*Id.* at p. 898.) "'Second, but equally important, [Government Code] section 815.6 requires that the mandatory duty be "designed" to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is '"one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty."' [Citation.] Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment "confers some benefit" on the class to which plaintiff belongs is not enough; if the benefit is "incidental" to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under section 815.6. [Citation.]' [Citations.] If these two prongs are met, the next question is whether the breach of the duty was a proximate cause of the plaintiff's injury." (*Guzman*, at p. 898.) It is a question of law whether an enactment creates a mandatory duty. (See *ibid.*; *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499.)

_____

caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

12 "Enactment" includes constitutional provisions, statutes, charter provisions, ordinances and regulations. (Gov. Code, § 810.6.)

Wisely contends the right to privacy recognized by article 1, section 1 of the California Constitution,[13] read in conjunction with article I, section 26's directive that "provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise," imposes a mandatory duty on public entities subjecting them to liability under Government Code section 815.6 for infringements of that right absent proof of reasonable diligence by the government actors. Wisely's argument fundamentally misperceives the nature of a "mandatory duty" within the meaning of Government Code section 815.6.

While constitutional directives are unquestionably "mandatory" or obligatory in the sense that government officials must obey them (see *State Board of Education v. Levit* (1959) 52 Cal.2d 441, 460 [article I, section 26 "not only commands that [the Constitution's] provisions shall be obeyed, but that disobedience of them is prohibited"]), that principle is largely irrelevant to a determination whether violation of an enactment, even one phrased as mandatory, gives rise to Government Code section 815.6 liability. (Cf. *Haggis v. City of Los Angeles*, *supra*, 22 Cal.4th at p. 506 [despite use of word "shall," municipal code provisions regarding development of property in landslide zones did not create mandatory duty].) No such liability can exist here: Article I, section 1 of the California Constitution, as important as it is, simply declares (that is, recognizes) the "inalienable" right of privacy, as well as to due process, to equal protection and to be free from unreasonable searches. Neither alone nor in combination with article I, section 26, does it impose any affirmative obligation on public entities to ensure a citizen's privacy is protected. (See *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 16 ["Article I, section 1 of the California Constitution is an enumeration of the 'inalienable rights' of all Californians. 'Privacy' is declared to be among those rights. Typical of broad constitutional declarations of rights, the section does not define 'privacy' or

---

13 Article I, section 1 of the California Constitution states, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness and privacy."

explain its relationship to other rights or interests."]; *Clausing v. San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1238 ["Although citizens have a private cause of action against public entities for violation of the right to privacy, no case has ever held that California Constitution, article I, section 1, imposes a *mandatory duty* on public entities to protect a citizen's right to privacy. The constitutional mandate is simply that the government is *prohibited* from *violating* the right; if it does, an aggrieved citizen may seek an injunctive remedy in court."]; see also *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 510 [statute permitting campus personnel to direct nonstudents to leave campus if they are or appear likely to interfere with peaceful conduct of activities on campus, but prohibiting impingement upon rights of free speech and assembly, did not create mandatory duty; "it merely prohibits certain conduct and does not set forth guidelines or rules for schools to follow in implementing an affirmative duty"].)

A rule of nonliability for a failure to enforce broad constitutional directives is consistent with the purpose of Government Code section 815.6 to apply "to public entities the familiar rule of tort law that violation of a legislatively prescribed standard of care creates a rebuttable presumption of negligence." (*Lehto v. City of Oxnard* (1985) 171 Cal.App.3d 285, 292.) The declaration of rights in the California Constitution does not provide any implementing guidelines and thus does not set forth the kind of specific, particularized duties the Legislature intended could give rise to government liability for damages under Government Code section 815.6. The trial court properly granted summary adjudication in favor of the public entity defendants on Wisely's cause of action under Government Code section 815.6 predicated on violations of the California Constitution.

19

4. *Wisely's Claims Against the State for Violating Her Constitutional Right to Privacy, Negligence and Negligent Supervision Based on Its Responsibility for the Misconduct of Prison Staff Employees Were Not Properly Resolved on Summary Adjudication*

Government Code section 820.2 states, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Government Code section 815.2, subdivision (b), extends that discretionary act immunity to the public entity whose employee's conduct is at issue, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." These statutes provide immunity for "basic policy decisions" by government officials, but not "for the ministerial implementation of that basic policy." (*Johnson v. State of California* (1968) 69 Cal.2d 782, 796.) The *Johnson* Court explained this distinction might be characterized as "between the 'planning' and 'operational' levels of decision-making." (*Id*. at p. 794.) "[T]here is no basis for immunizing lower level decisions that merely implement a basic policy already formulated. [Citation.] The scope of the discretionary act immunity 'should be no greater than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions.'" (*Barner v. Leeds* (2000) 24 Cal.4th 676, 685.)

The trial court ruled the decision to purchase and use the Secure 1000 machines at California prisons, drafting and approving policies and procedures for their use, and implementing those policies and procedures all fell within the scope of the discretionary immunity conferred by Government Code section 820.2. On that basis the court granted the motions for summary adjudication directed to Wisely's claims alleging violation of her state constitutional right to privacy (fourth cause of action), negligence (ninth cause of action) and negligent supervision and training (tenth cause of action).[14]

---

[14] Discretionary immunity under section 820.2 would also defeat Wisely's claim under Civil Code section 52.1 even if it otherwise had been properly supported by evidence of actionable coercion under the statute. (See *County of Los Angeles v.*

20

Wisely does not challenge that ruling on appeal. However, she argues the court erred in granting summary adjudication on these three causes of action in favor of the public entity defendants (the State, the CDC and the California State Prison at Lancaster) because the moving papers failed to address her theory the State was liable under the doctrine of respondeat superior (or vicarious liability) for the nondiscretionary conduct of prison line staff who had violated her rights (and those in the class she represents) when conducting scanning with the Secure 1000 without reasonable suspicion those visitors were carrying contraband and for the faulty training those employees had received from their immediate supervisors. (See *Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1128 ["[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior"].) Although her opposition papers did not identify that significant omission, as plainly would have been the better practice, to the extent Wisely's eighth amended complaint contained allegations sufficient to support these claims of vicarious liability, summary adjudication in favor of the public entity defendants should not have been granted. (See, e.g., *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 929 [summary judgment in favor of defendant inappropriate when defendant failed to address cause of action alleged, albeit not separately pleaded in complaint; defendant cannot defeat for first time in reply cause of action it failed to address in its moving papers]; *Crouse v, Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1534 [if defendant fails to meet its initial burden of showing entitlement to judgment as a matter of law, burden does not shift to plaintiff and motion is properly denied without regard to plaintiff's opposition].)[15]

_____

*Superior Court* (2009) 181 Cal.App.4th 218, 231; *O'Toole v. Superior Court*, *supra*, 140 Cal.App.4th at pp. 504-505.)

[15] The individually named defendants cannot be liable under a theory of respondeat superior. (Gov. Code, § 820.8 ["a public employee is not liable for an injury caused by the act or omission of another person"]; see generally *Hansen v. Black* (9th Cir. 1989) 885 F.2d 642, 645-646 ["supervisory officials are not liable for actions of subordinates on any theory of vicarious liability"]; *Hunt v. Dental Dept.* (9th Cir. 1989) 865 F.2d 198,

a. *Law governing vicarious liability for public entities*

Government Code section 815.2, subdivision (a), imposes vicarious liability on a public entity for its employees' wrongful conduct: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." "Under the doctrine of respondeat superior, the vicarious liability of an employer or principal is not based on fault. The liability is imposed as a rule of policy, 'a deliberate allocation of a risk,' regardless of the employer's control or fault." (*Lathrop v. Healthcare Partners Medical Group* (2004) 114 Cal.App.4th 1412, 1423; see *Eastburn*, *supra*, 31 Cal.4th at p. 1180 [Gov. Code, § 815.2, subd. (a), "makes a public entity *vicariously* liable for its employee's negligent acts or omissions within the scope of employment"].) "In other words, 'the general rule is that an employee of a public entity is liable for his torts to the same extent as a private person ([Gov. Code,] § 820, subd. (a)) and the public entity is vicariously liable for any injury which its employee causes ([Gov. Code,] § 815.2, subd. (a)) to the same extent as a private employer ([Gov. Code,] § 815, subd. (b)).'" (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868.)

"A plaintiff seeking to hold an employer liable for injuries caused by employees acting within the scope of their employment is not required to name or join the employees as defendants. [Citations.] [¶] The plaintiff may be unable to identify which employee committed the wrongful act, but this is not fatal to the employer's liability, if the evidence establishes that some employee in the scope of employment committed the wrongful act." (*Perez v. City of Huntington Park* (1992) 7 Cal.App.4th 817, 820; accord, *County of Los Angeles v. Superior Court* (2002) 102 Cal.App.4th 627, 644 ["'[i]dentification of a specific employee tortfeasor is not essential to County liability under [Gov. Code, §] 815.2'"]; see Legis. Com. com., pt. 1 West's Ann. Gov. Code

200 [supervisor not "vicariously liable for the fault of personnel"; director of Arizona Department of Corrections not liable for actions of prison personnel].)

22

(2012 ed.) foll. § 815.2, p. 240 ["[I]t will not be necessary in every case to identify the particular employee upon whose act the liability of the public entity is to be predicated. All that will be necessary will be to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable."]; *C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th at p. 872 [although complaint failed to identify public entity employees who allegedly failed to properly hire and train guidance counselor accused of sexual harassment, "the District cites no statute or decision requiring a plaintiff to specify *at the pleading stage* which of the defendant's employees committed the negligent acts or omissions for which a public entity is allegedly liable under section 815.2"]; but see *Munoz v. City of Union City* (2004) 120 Cal.App.4th 1077, 1113, disapproved on other grounds in *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639, fn. 1 [stating in appeal from judgment in favor of plaintiff after a jury trial, "unless the employee is identified, the trier of fact will not be able to determine if the elements needed to assert vicarious liability have been proved"].)

### b. *The eighth amended complaint sufficiently alleged the State's vicarious liability for the conduct of line staff*

As Wisely acknowledges, the primary focus of the eighth amended complaint was the decision to buy the Secure 1000 and the overarching policies associated with its use, such as screening every visitor even in absence of reasonable suspicion that a visitor may be attempting to smuggle weapons or narcotics into the prison. Nevertheless, the 54-page complaint, although not a model of clarity, alleged additional wrongful conduct by line staff related to the actual implementation of the screening program, including permitting cross-gender screening and failing to adequately separate the screening area so personnel not directly involved in the screening could not view the graphic images. It thus provided an adequate basis for claims of vicarious liability. For example, paragraph 45 alleged, on information and belief, that "CDC employees frequently monitor the x-ray scans of visitors of the opposite sex . . ."; paragraph 61 identified among common questions of fact, "[w]hether the x-ray examination scans are conducted in an area of privacy so that

23

the results of the scan cannot be observed by persons not participating in the scan, or whether the scans are conducted in open areas where they may be observed by persons not participating in the scans . . . ." In addition, paragraph 137, after specifically referring to Government Code section 815.2, the statutory foundation for a vicarious liability claim, expressly alleged the public entity defendants are liable for the wrongful acts of CDC employees "whether or not named in this complaint, acting within the scope of his or her employment." Even the trial court acknowledged, although the case was primarily about overarching policies, it had heard for a "goodly long time" Wisely's claim "that the scans were done somehow improperly."

Although the complaint does not identify any particular individual whose conduct in conducting or reading the scans violated Wisely's rights, as discussed, it did not need to do so to allege liability under a respondeat superior theory. (See *County of Los Angeles v. Superior Court*, *supra*, 102 Cal.App.4th at p. 644.) Indeed, implicit in the allegations of injury to the named class representatives by the manner in which the scans were used, and the subsequent strip and body cavity searches conducted, is that line staff were the actors.

It may be, as the government defendants contend and the trial court observed in its ruling on Wisely's motion for reconsideration, class certification would not have been obtained had that battle not been focused on the broad policy issues such as mandatory scanning in the absence of reasonable suspicion. Whether class certification remains viable—subclasses were created on a prison-by-prison basis and many of the allegedly objectionable practices appear to have occurred on a facility-wide basis—is a question for the trial court to address on remand; it is not germane to our determination that summary adjudication was improperly granted because the respondeat superior claims were not addressed.

c. *Government Code section 815.2 is a sufficient statutory basis for the negligence and negligent supervision causes of action*

Wisely's vicarious liability theory encompassed her constitutional privacy claim,[16] as well as her causes of action for negligence and negligent supervision. Relying on *Munoz v. City of Union City*, *supra*, 120 Cal.App.4th 1077, the government defendants argue both of these latter causes of action are, in actuality, direct actions against the public entities and thus both fail because there is no statutory authorization for them. (See *Eastburn*, *supra*, 31 Cal.4th at p. 1183 ["direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714"].) In *Munoz* relatives of a woman killed by a police officer after being summoned to a home because she was brandishing knives and acting erratically sued the officer, police department and city for claims including wrongful death, negligence and a direct claim for negligent employment and failure to supervise and train employees. (*Munoz*, at p. 1082.) The jury returned a special verdict finding the officer and city liable for negligence and battery (unreasonable force). The Court of Appeal reversed the portion of

---

[16] The government defendants argued in support of summary adjudication in the trial court that there was no private cause of action for damages for violating the state constitutional right to privacy. The court rejected that argument, relying on *Porten v. University of San Francisco* (1976) 64 Cal.App.3d 825, which, the court explained, although not specifically holding that plaintiff's cause of action under the constitution would entitle him to damages, rather than only equitable relief, "implie[d]" a damage remedy was available to remedy a violation of article I, section 1 of the Constitution. In fact, whether violation of the privacy clause permits an action for damages remains an open question. (See *Katzberg v. Regents of University of California* (2002) 29 Cal.4th 300, 313, fn. 13 ["[w]e have no occasion to consider in the present case the circumstances under which the privacy clause of the state Constitution may support a cause of action for damages"]; see also *Richardson-Tunnell v. Schools Ins. Program for Employees* (*SIPE*) (2007) 157 Cal.App.4th 1056, 1066 ["[o]ur Supreme Court has not yet considered whether violation of the privacy clause permits an action for damages"].) Moreover, the Supreme Court has dismissed the significance of *Porten*, noting, "[T]he court appears to have assumed damages would be available for such a violation, but it did not analyze or discuss that question." (*Katzberg*, at p. 313, fn. 13.) Nonetheless, the government defendants have not raised this issue on appeal; and we do not consider it here.

25

the jury verdict based on direct negligence, explaining under *Eastburn* the direct cause of action against the city for "not having done more to prevent the confrontation from developing, either through the promulgation of clearer police procedures, or by better officer training and supervision" was barred.  (*Munoz*, at pp. 1112, 1113.)  As for the separate cause of action for respondeat superior, which alleged the city "bears legal responsibility for the conduct charged against [the officer] *only*, pursuant to Government Code section 815.2, subdivision (a)," the court held, "while respondents are correct insofar as they state public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability. . . .  To accept respondents' argument would render the distinction between direct and vicarious liability completely illusory in all cases except where the employer is an individual."  (*Munoz*, at p. 1113.)

The Supreme Court in *C.A. v. William S. Hart Union High School Dist.*, *supra*, 53 Cal.4th 861 distinguished *Munoz* and declined to adopt its restrictive approach to public entity vicarious liability for claims of negligence:  "Unlike the theory rejected in *Munoz*, plaintiff's theory of the District's liability does not depend on blurring the line between direct and vicarious liability or on an assumption that a public entity's negligence liability is inherently vicarious.  Plaintiff alleges the District's administrators and employees knew or should have known of [the school guidance counselor's] dangerous propensities, but nevertheless hired, retained and failed to properly supervise her.  These allegations, if proven, could make the District liable under a vicarious liability theory encompassed by section 815.2."  (*Id.* at p. 875.)

Similarly, Wisely's claims of negligence and negligent supervision are not simply a disguised direct action.  Although arguably amorphous as pleaded in the eighth amended complaint, by the time of summary judgment Wisely's theory was focused.  As she explained, with evidentiary support, in opposition to the government defendants' motion for summary adjudication, "Specifically, after having evaluated the Secure 1000 at the R.J. Donovan prison, the CDC's *own* recommendation was that for a novice, 16 to 24 hours of training was necessary to 'come-up-to-speed and to be accurate with the

26

identification process.' 'Ninety Day Test Evaluation of the "Secure 1000, Concealed Object Detention System."' [Citation.] In deposition after deposition, however, CDC officers testified that they received anywhere from thirty minutes to two hours of training before using the machine on visitors. [Citation.] The Secure 1000's manufacturer offered operator training at a cost, but the CDC declined. [Citation.] [¶] The lack of training and supervision directly resulted in officer's inability to discern contraband from non-contraband when viewing images on the Secure 1000. As a result, hundreds of visitors were subjected to a more intrusive proximate search, when in fact there was no legitimate basis to do so. . . . [¶] . . . [¶] The CDC approved the Secure 1000 for use on visitors to inmates without establishing any procedures prior to its use. [Citation.] Without any centralized procedures in place, visitors were scanned by members of the opposite sex, visitors were subjected to more intrusive physical searches without a reasonable basis for doing so, some visitors were scanned twice . . . and viewing monitors were placed in locations where non-essential personnel or other visitors could see the screen. [Citation.]"

The negligent supervision cause of action thus asserts a theory of liability against lower level supervisors who failed to properly train the line staff conducting the scans. Similarly, the cause of action for negligence is also predicated on the line staff's alleged misconduct in conducting scans of visitors of the opposite sex and in locations where people not directly involved in the scanning could observe the monitors. Although these claims for negligent breach of duty by line staff and next level supervisors significantly overlap (or, perhaps, completely duplicate) Wisely's cause of action for violation of her right to privacy, they were adequately pleaded and not properly challenged in the motion for summary adjudication. Accordingly, the order granting the motion as to the ninth and tenth causes of action as to the public entity defendants, responsible for this alleged misconduct under the doctrine of respondeat superior, must be reversed.

d. *The issue of good faith immunity for prison line staff was not properly before the trial court*

Government Code section 820.4 provides, in part, "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." Similarly, Government Code section 820.6 provides, "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except to the extent that he would have been liable had the enactment been constitutional, valid and applicable." Even if CDC staff employees are engaged in ministerial conduct in connection with scanning of visitors, if they are entitled to good faith immunity under either of those provisions, the State and other public entity defendants would likewise be immune from liability under Government Code section 815.2, subdivision (b). (See, e.g., *Richardson-Tunnell v. Schools Ins. Program for Employees* (*SIPE*) (2007) 157 Cal.App.4th 1056, 1066 ["[t]he constitutional right to privacy does not limit the scope of a preexisting statutory immunity"].)

Because their motions for summary adjudication focused on activities within the scope of senior correctional officials' discretionary immunity, the applicability of Government Code sections 820.4 and 820.6 was not raised by the government defendants in their motions for summary adjudication and, therefore, was not properly before the trial court. Although the parties briefed the issue at the request of the trial court as part of its sua sponte order for reconsideration, the court did not reach the issue, rejecting the respondeat superior claim on the ground it had not been properly pleaded by Wisely. Thus, the issue of good faith immunity remains for determination on remand and will depend on resolution of two underlying issues: whether prison employees were executing, enforcing or otherwise acting under the apparent authority of a "law" or "enactment";[17] and if they were, whether they were acting with due care or in good faith.

---

[17] "Enactment" is defined in Government Code section 810.6 as "a constitutional provision, statute, charter provision, ordinance or regulation." "'Law' includes not only enactments but also the decisional law applicable within this State . . . ." (Gov. Code,

28

Wisely has argued no "enactment" authorized the decision to purchase and use the Secure 1000 or approved the search policies associated with it that might immunize the CDC staff employees under the Government Code. That position finds some support in a decision by a magistrate judge for the United States District Court in Northern California. (See *Hansen v. California Dept. of Corrections* (N.D.Cal. 1996) 920 F.Supp. 1480, 1501-1502 [regulation governing drug testing sample collection procedures provides "*department shall specify procedures to ensure that true samples are obtained*"; because regulation is silent whether urine testing should be directly observed, CDC's direct observation policy "does not rise to the level of an 'enactment'"].) It may be, however, that the regulation authorizing inspection of prison visitors "to whatever degree is consistent with the institution's security needs" (Cal. Code Regs., tit. 15, § 3173, former subd. (e)), although quite general, is sufficient for purposes of Government Code sections 820.4 or 820.6. For example, in *Peterson v. Long Beach* (1979) 24 Cal.3d 238, the Supreme Court observed the definition of regulation in Government Code section 811.6 "surely includes the standards for use of weapons when the standards have the force of law and were adopted, as they were here, by the public entity's employees (city manager and police chief), pursuant to authority vested by charter or ordinance to implement, interpret, or make specific the law administered by those employees and their subordinates." (*Peterson*, at p. 246; see *Posey v. State of California* (1986) 180 Cal.App.3d 836, 849 ["[R]egulations having the 'force of law' have been defined as '"those regulations . . . that are promulgated pursuant to an authorization to 'implement, interpret, or make specific' a law being enforced or administered by the promulgator. This excludes informal 'guides,' 'policy manuals,' and 'recommended procedures' helpful in establishing the standards of statutes, but lacking the force of law.'"'].) The

_____

§ 811.) "Regulation" is defined as "a rule, regulation, order or standard, having the force of law, adopted . . . as a regulation by an agency of the state pursuant to the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2)." (Gov. Code, § 811.6.)

answer to that question requires development of a more complete record, and we express no view on it at this time.

Similarly, because the issue was not properly presented in connection with the motions for summary adjudication, there is nothing in the record from which it can be determined, even if one of these immunity statutes was applicable, that the CDC line officers were exercising due care or acting in good faith when operating the Secure 1000. (See *Ogborn v. City of Lancaster* (2002) 101 Cal.App.4th 448, 462 [reversing summary judgment, finding triable issue of fact whether public employee exercised due care in executing warrant in connection with nuisance abatement program].)  That question, too, must be addressed in the first instance by the trial court on remand.

## DISPOSITION

The judgment is affirmed as to the individually named defendants.  The judgment is reversed as to the State of California and other public entity defendants.  The trial court is directed on remand to vacate its orders granting the public entity defendants' motions for summary adjudication as to all damage causes of action and to issue a new and different order granting the motions on the first, second, third, fifth, sixth, seventh and eighth causes of action and denying the summary adjudication motions as to the fourth, ninth and tenth causes of action; to vacate its order denying Wisely's motion for attorney fees; and to conduct further proceedings not inconsistent with this opinion.  The parties are to bear their own costs on appeal.


PERLUSS, P. J.


We concur:



ZELON, J.                        IWASAKI, J.[*]

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

30